## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District | COLUMBIA | |
|---|---|---|---|
| Name *(under which you were convicted):*<br>WALDEMAR LORENZANA-CORDON | | | Docket or Case No.:<br>1:03-CR-00331-14 |
| Place of Confinement:<br>UNITED STATES PENITENTIARY LEE | | Prisoner No.:<br>33481-016 | |
| UNITED STATES OF AMERICA<br><br>V. | | Movant *(include name under which convicted)*<br>WALDEMAR LORENZANA-CORDON | |

### MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:
   UNITED STATES DISTRICT COURT
   FOR THE DISTRICT OF COLUMBIA

   (b) Criminal docket or case number (if you know): 1:03-CR-00331-14

2. (a) Date of the judgment of conviction (if you know): 5/15/2018

   (b) Date of sentencing: 5/10/2018

3. Length of sentence: LIFE

4. Nature of crime (all counts):

   One Count of Conspiring to "Import Into The United
   States" and to "Manufacture and Distribute" for Import into the
   United States Five kilograms or More of Cocaine in Violation of 21 U.S.C. §§ 952, 959, 960(b)(1)(B)(ii), and
   963.

5. (a) What was your plea? (Check one)
   (1) Not guilty ☑      (2) Guilty ☐      (3) Nolo contendere (no contest) ☐

6. (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment,
   what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have? (Check one)      Jury ☑      Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?      Yes ☐      No ☑

8. Did you appeal from the judgment of conviction?     Yes ☑     No ☐

9. If you did appeal, answer the following:

    (a) Name of court: <u>UNITED STATES COURT OF APPEALS FOR THE D.C CIRCUIT</u>

    (b) Docket or case number (if you know): <u>18-3033</u>

    (c) Result: <u>AFFIRMED</u>

    (d) Date of result (if you know): <u>1/31/2021</u>

    (e) Citation to the case (if you know): <u>United States v. Lorenzana-Cordon, No. 18-3019 (D.C. Cir. 2020)</u>

    (f) Grounds raised:

Whether a Constructive Amended Indictment Took Place

    (g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐     No ☑

       If "Yes," answer the following:

       (1) Docket or case number (if you know):

       (2) Result:

       (3) Date of result (if you know):

       (4) Citation to the case (if you know):

       (5) Grounds raised:

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?

    Yes ☐     No ☑

11. If your answer to Question 10 was "Yes," give the following information:

    (a) (1) Name of court:

       (2) Docket or case number (if you know):

       (3) Date of filing (if you know):

    (4)  Nature of the proceeding: _____

    (5)  Grounds raised:

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

         Yes ☐     No ☑

    (7)  Result: _____

    (8)  Date of result (if you know):

(b) If you filed any second motion, petition, or application, give the same information:

    (1)  Name of court: _____

    (2)  Docket of case number (if you know): _____

    (3)  Date of filing (if you know): _____

    (4)  Nature of the proceeding:

    (5)  Grounds raised:

    (6)  Did you receive a hearing where evidence was given on your motion, petition, or application?

         Yes ☐     No ☑

    (7)  Result: _____

    (8)  Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

    (1)  First petition:     Yes ☐     No ☐

    (2)  Second petition:  Yes ☐     No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** A. Whether Counsel Robert E. Cappell Rendered Ineffective Assistance For Representing Both Co-defendants on Appeal Even When Such Fact Created Conflict of Interest and Deprived Waldemar Lorenzana of the Guarantee of "Assistance of Counsel" Under the Sixth Amendment.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

In the case at hand the record clearly reflects that although Lorenzana during trial was represented by a different counsel, Robert E. Cappell argued the cause and filed the briefs for both appellants. (Eliu Lorenzana and for Waldemar Lorenzana-Cordon), which created a direct conflict of iterest.

While representing the Lorenzana's appeal, Counsel Cappell was medically unfitted to represent both appeals [18-3019, 18-3033], being that Counsel Cappell was diagnosed with terminal cancer prior to May 14, 2019, during Lorenzana's reply brief and Oral Arguments on December 5, 2019.

See Memorandum in Support of Motion Attached.

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☑

(4)  Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☑

(5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☑

(6)  If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)  If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

Ineffective Assistance of Counsel are best presented during habeas proceedings 28 U.S.C 2255 motion.

**GROUND TWO:**  B. Whether Counsel Robert E. Cappell Failed to Properly Challenge That The Lorenzana's ~~Extradition Was Strictly Based On The Herrera's Limited Duration of Their Conspiracy From 1999~~ to 2003.

(a)  Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

In analyzing the history of the Lorenzana's extradition, the existence of petitioning document, and Republic of Guatemala's limited granting document, cast conflict and confusion respecting specific and limited agreement in rendering extradition by the Republic of Guatemala. In first glance we have Affidavit of Agent Mary Toscano in Support of Extradition. However, affidavit of Mary Toscano was the initial petition for extradition, yet not the actual redacted and limited document for which the Republic of Guatemala issued extradition. The Republic of Guatemala in granting extradition documents disagreed with Agent Mary Toscano's affidavit, and limited extradition only to the facts taking place from 1999-2003. (criminal case number 03-331. (1:03-CR-00331) the Herrera's duration of their criminal organization). If we analyze this critical matter properly, request from the United States, and formal document in which Guatemala granted extraditions are two different documents that exacerbate different approaches. Specially, when clarifying such an important fact, such analysis may well change the outcome and perception of the Lorenzana's case.

See Memorandum in Support of Motion For Details.

(b)  **Direct Appeal of Ground Two:**

(1)  If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

Ineffective Assitance of Counsel Claims are best presented during Habeas 28 U.S.C 2255 Motion

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐ No ✔

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐ No ✔

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐ No ✔

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐ No ✔

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

Ineffective Assitance of Counsel Claims are best presented during Habeas 28 U.S.C 2255 Motion

**GROUND THREE:** C. Whether Trial Counsel and Counsel Cappell Were Ineffective For Not Challenging The insufficiency of The Elements To Prove Distribution Manufacture and Distribution of Five Kilograms or More of Cocaine With Out Affecting The Rule of Lenity.

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

On March 22, 2016 a jury trial, siting in the District of Colimbia convicted Waldemar Lorenzana Cordon of unlawfully, knowingly, and intentionally import into the United States five kilograms or more of a mixture and substance containing a detectable amount of cocaine; and "manufacture and distribute" Five kilograms or more of a mixture and substance containing a detectable amount of cocaine, knowing or intending that such a substance would be unlawfully imported into the United States in violation of Title 21 U.S.C. §§ 952, 959, 960(b)(1) (B)(ii), and 963. (Doc # 802).

The question here is whether the sufficiency of the evidence supports distribution, manufacture and importation of Five kilograms or more of cocaine as a single count (Count One) in the Third Superseding Indictment without affecting the Rule of Lenity.

Mr. Lorenzana urges that the ambiguity in charging multiple charges in one count (Count One) lessened the burden of the government's proof during Mr. Lorenzana' z trial, and denied him of proper notice of the charges against him.

See Memorandum in Support of Motion for Details

(b) **Direct Appeal of Ground Three:**

(1) If you appealed from the judgment of conviction. did you raise this issue?

Yes ☐   No ☑

(2) If you did not raise this issue in your direct appeal, explain why:

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion. petition. or application?

Yes ☐   No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion. petition. or application?

Yes ☐   No ☑

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐   No ☑

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐   No ☑

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

## GROUND FOUR:

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)  **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐        No ☐

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)  **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐        No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?
    Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?
    Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?
    Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?  Yes ☐  No ☐

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

    (a) At the preliminary hearing:
    A. Eduardo Balarezo

    (b) At the arraignment and plea:

    (c) At the trial:
    Robert K Cappell

    (d) At sentencing:
    Robert k. Cappell

    (e) On appeal:
    Robert K. Cappell

    (f) In any post-conviction proceeding:

    (g) On appeal from any ruling against you in a post-conviction proceeding:

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?  Yes ☐  No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?  Yes ☐  No ☑

    (a) If so, give name and location of court that imposed the other sentence you will serve in the future:

    (b) Give the date the other sentence was imposed:

    (c) Give the length of the other sentence:

    (d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?  Yes ☐  No ☐

18. TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

In relevant part the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA" ) as contained in 28 U.S.C 2255, paragraph 6, provides that:
A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
(a). the date on which the judgment of conviction became final.
Petitioner did file direct appeal from the final judgment and conviction. Petitioner' s judgment became final on the day of judgment in his criminal case. Petitioner shall have a one-year until December 30, 2021 to file his timely habeas corpus petition.

---

* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:
Mr. Lorenzana respectfully moves this honorable court to Vacate his Sentence and Conviction

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _December 27, 2021_
(month, date, year)

Executed (signed) on _December 27 2071_ (date)

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WALDEMAR LORENZANA-CORDON, | ] |
| Petitioner, | ] |
| | ] |
| Vs. | ] CRIM. No. 1:03-CR-00331-14 |
| | ] |
| UNITED STATES OF AMERICA, | ]    MEMORANDUM |
| Respondent. | ] |
| | ] |

## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY PURSUANT TO 28 U.S.C 2255.

Waldemar Lorenzana-Cordon, ("Lorenzana"), hereby acting Pro se, respectfully moves to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C 2255 motion. Petitioner respectfully requests that this Honorable Court make the proper findings and provide relief from a conviction and sentence that was imposed herein in violation of the United States constitution and laws of the United States.

Petitioner urges claims of ineffective assistance of counsel in violation of <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984).

## I    JURISDICTION

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the grounds that the sentence was imposed in violation of the Constitution or laws of the United States or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. Id. 28 U.S.C 2255. See Davis v. United States, 417 U.S. 333, 343, 94 S.Ct. 2298, 2304 41 L.Ed.2d 109 (1974).

## II    *TIMELINE*

In relevant part the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA") as contained *in 28 U.S.C 2255*, paragraph 6, provides that:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(a). the date on which the judgment of conviction became final.

Petitioner did file direct appeal from the final judgment and conviction. Petitioner's judgment became final on the day of judgment in his criminal case. Petitioner shall have a one-year until December 30, 2021 to file his timely habeas corpus petition.


## III    STATEMENT OF THE FACTS

According to the theory of the case, in 1995, Otto Herrera—a Guatemalan narcotics trafficker who worked for the Sinaloa Cartel, a Mexican drug syndicate—approached members of the Lorenzana-Cordon family with a proposal to turn the family's properties in Guatemala into makeshift airfields and warehouses where drug organizations "could store and safeguard cocaine shipments . . . until the Mexican drug traffickers could come pick them up." Trial Tr. 27 (Mar. 1, 2016, 2:00 PM). In exchange, traffickers would pay the family a fee for each load held at the properties. The family, including brothers Eliu and Waldemar, met with Herrera and approved the deal. Colombian suppliers then began transporting thousands of kilograms of cocaine to a farm owned by the Lorenzana-Cordon family for delivery to Mexican purchasers. Although aware of the arrangement, the brothers were initially uninvolved in the trafficking activities.

That changed in 1998, when Herrera moved the operation to a different farm owned by the family, at which point the brothers took on more active roles. Following the move, the brothers facilitated several cocaine transactions, with Eliu offloading shipments and Waldemar serving as a lookout—the cocaine ultimately destined for the United States by way of Mexico and the Sinaloa Cartel. Around this time, the brothers, through Herrera, also struck a deal with Colombian suppliers to purchase a portion of the cocaine being stored on the family's properties in order to

resell it to their own customers. The arrangement proved profitable, with both Eliu and Waldemar buying and then selling hundreds of kilograms of cocaine.
In 2003, the family's arrangement with Herrera abruptly ended when U.S. law-enforcement officials discovered the location of Herrera's stash house in Guatemala. Local law enforcement officials executed a search of the house, recovering a cache of weapons and U.S. currency. The raid effectively ended Herrera's trafficking activities.

Needing fresh supplies of cocaine, in 2004, the brothers met with Marllory Chacon, a Guatemalan woman who laundered money for Colombian cartels and who offered the brothers the opportunity to acquire over a ton of cocaine from Colombian suppliers. The brothers agreed to purchase the cocaine, with Eliu fronting the money and Waldemar arranging the logistics. Additional purchases followed, but the arrangement ended after the brothers made late payments to the Colombians. In 2008, Eliu and Waldemar reconnected with Chacon, enlisting her help to launder and transfer millions of dollars out of Guatemala.

Some years earlier, in either 2005 or 2006, the brothers also purchased cocaine from Jose Handal, a Honduran trafficker. The brothers met with David Andrade, Handal's intermediary, at a farm in Honduras where they loaded several hundred kilograms of cocaine into the hidden compartment of a cattle truck and then drove the truck across the border into Guatemala. Several days later, the brothers returned to Honduras to deliver several million dollars as payment.

Throughout this period, Eliu and Waldemar continued selling wholesale quantities of cocaine to various customers. But they typically did so separately. For example, Walter Merida, a Guatemalan involved in trafficking cocaine and manufacturing ephedrine, purchased thousands of kilograms of cocaine from Eliu though he never bought from Waldemar. The brothers even occasionally competed for sales. Sebastiana Cotton, a Guatemalan trafficker who purchased cocaine from both Eliu and Waldemar, testified that, at one point, Waldemar offered to undercut Eliu's prices.

Eventually, the brothers came to the attention of U.S. law enforcement officials, and, in 2009, a federal grand jury issued a sealed indictment charging Eliu and Waldemar, among others, with one count of conspiring to "import into the United

States" and to "manufacture and distribute" for import into the
United States five kilograms or more of cocaine in violation of 21 U.S.C. §§ 952,
959, 960(b)(1)(B)(ii), and 963. Third Superseding Indictment (Indictment), Joint
Appendix (J.A.) 457–58. The Indictment further specified that the brothers
conspired "with each other, and with other co-conspirators, both known and
unknown to the Grand Jury" in "the Republic of Colombia, El Salvador, Guatemala,
Mexico, and elsewhere." *Id.* Guatemala extradited the brothers to the United States
and, following a trial at which they were the sole codefendants, a jury convicted both
Eliu and Waldemar on the conspiracy count.

Sentencing was held on 5/10/2018 as to WALDEMAR LORENZANA-
CORDON as to Count 1s: Life, Ten (10) Years Mandatory Minimum, followed by
Supervised Release Period of Sixty (60) Month and a Special Assessment of $100.00

## V. COGNIZABLE ISSUES UNDER § 2255

The function of a §2255 Motion to Vacate, Set Aside or Correct Sentence is to
inquire into the legality of the federal prisoner's detention. See Heflin v. United
States, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify
relief for a federal prisoner who challenges the imposition or length of his or his
detention: (1) "that the sentence was imposed in violation of the Constitution or laws
of the United States" and is of constitutional magnitude which has a substantial and
injurious effect or influence on the proceedings. Brecht v. Abrahamson, 507 U.S.
619, 637 (citation omitted) (§ 2254 case); Clemmons v. Sowders, 34 F.3d 352, 354
(6th Cir. 1994); see also United States v. Cappas, 29 F.3d 1187, 1193 (7th Cir. 1994)
(applying Brecht to a § 2255 motion); (2) "that the court was without jurisdiction to
impose such sentence" If the sentencing court lacked jurisdiction, then the
conviction is void and must be set aside. Williams v. United States, 582 F.2d 1039,
1041 (6th Cir.), cert. denied, 439 U.S. 998 (1978). To warrant relief for a non-
constitutional error requires a showing of a fundamental defect in the proceedings

4

that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. <u>Reed v. Farley</u>, 512 U.S. 339,354 (1994); <u>Grant v. United States</u>, 72 F.3d 503, 506 (6th Cir.), cert. denied, 116 S. Ct. 1701, 134 L. Ed.2d 800 (1996); (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (1994). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete miscarriage of Justice." <u>Davis v. United States</u>, 417 U. S. 333, 346 (1974).

In §2255 proceedings, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record, and that a credibility determination is necessary in order to resolve the issue. Upon granting a § 2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him ... or correct the sentence as may appear appropriate." The remedy provided in §2255 is broad and flexible and entrusts the federal courts with the power to fashion appropriate relief. See <u>Andrews v. United States</u>, 373 U. S. 334, 339 (1963). The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions. See <u>Strickland v. Washington</u>, 466 U. S. 668 (1984). As such, ineffective assistance of counsel claims are cognizable in a §2255 setting because they are of constitutional dimension. See <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 371-79 and n.3 (1986); Strickland, supra. The Sixth Amendment also entitles a defendant to the assistance of counsel at every critical stage of a criminal prosecution. <u>Kirby v. Illinois</u>, 406 U.S. 682, 690 (1972). Critical stages are those steps of a criminal proceeding that hold significant consequences for the accused.

See <u>Bell v. Cone</u>, 535 U.S. 685, 695-96 (2002). Thus, a defendant is entitled to counsel at any proceeding where an attorney's assistance may avoid the substantial prejudice that could otherwise result from the proceeding. See <u>Coleman v. Alabama</u> 399 U.S. 1,9 (1970). To prevail on an ineffective assistance of counsel claim, Kemp must show: (1) that his "counsel's representation fell below an objective standard of reasonableness: and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 694 (1984). The first Strickland requirement is commonly called the "performance" prong and the second is called the "prejudiced" prong. See Strickland, 466 U. S. at 687. Further, Kemp must show that counsel's errors were prejudicial and deprived him of a "fair trial", or in other words, a trial whose result is reliable. Id. The familiar two-part test of Strickland referenced above has been applied by the Supreme Court and the Seventh Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance in all phases of the proceedings. Id. Defendants can raise ineffective assistance claims concerning performance before trial <u>Kimmelman v. Morrison</u>, 477 U. S. 365, 371-79, performance during trial, Strickland, 466 U.S. at 686, 87, and performance at sentencing, <u>Glover v. United States</u>, 531 U. S. 198 (2001). If counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing," the adversarial testing," the adversarial process itself becomes presumptively unreliable. United <u>States v. Cronic</u>, 466 U. S. 648, 659 (1984).

## VI. GROUNDS FOR RELIEF

In his several complaints for relief under 28 U.S.C. § 2255, Lorenzana contends that his conviction stems from the abrogation of her Sixth Amendment right to the

effective assistance of counsel. Lorenzana specifically contends that his attorney's efforts in his behalf were deficient in the following respects:

## Argument One.

**A. Whether Counsel Robert E. Cappell Rendered Ineffective Assistance For Representing Both Co-defendants on Appeal Even When Such Fact Created Conflict of Interest and Deprived Waldemar Lorenzana of the Guarantee of "Assistance of Counsel" Under the Sixth Amendment.**

In the case at hand the record clearly reflects that although Lorenzana during trial was represented by a different counsel, *Robert E. Cappell* argued the cause and filed the briefs for both appellants. (Eliu Lorenzana and for Waldemar Lorenzana-Cordon).

### 1. Extraordinary and compelling reasons exist to support that Counsel E. Cappell was unfitted to represent Lorenzana-Cordon.

Lorenzana's appeal Brief was filed on or about May 14, 2019. The Government filed its response brief on August 28, 2019. On October 7, 2019, counsel Cappell filed reply brief to government's response. Oral Arguments were Held before Judges Tatel, Millett and Pillard. Id. [18-3019, 18-3033].

While representing the Lorenzana's appeal, Counsel Cappell was medically unfitted to represent both appeals [18-3019, 18-3033], being that Counsel Cappell was diagnosed with terminal cancer prior to May 14, 2019, during Lorenzana's reply brief and Oral Arguments on December 5, 2019.

Counsel Cappell was battling his terminal cancer during the Lorenzana's appeal proceedings, medical records reveal that during this time counsel Cappell was kept highly medicated and uncapable from rendering professional representation as demanded by the Sixth Amendment. The record speaks for itself here, being that not longer after Oral Arguments in this case, Counsel pass away.

Before the court is now Lorenzana's motion to vacate his sentence under 28 U.S.C. § 2255 on the ground of his appeal counsel's ineffectiveness. In support of this claim, Lorenzana presents, that his appeal counsel (Mr. Cappell) was battling against his terminal cancer medical condition and could not render proper representation. Counsel was impaired by the medication he was taking during the appeal. Counsel's intoxication impaired his ability to provide effective representation."

Lorenzana anticipates that the government will respond that this claim is meritless: Is not defaulted because Mr. Lorenzana does identify concrete deficiency during appeal's performance and has sufficient reason to believe that the outcome of the appeal would likely have been different if his attorney had not been under the influence of medication and battling for his life.

Furthermore, other attorneys that witnessed Counsel's Cappell's final days are willing to offer affidavits in support that the effects and incompetence of counsel Cappell during the time he battled against his terminal cancer clearly affected his capacity to perform in court. Sadly, during the same time was the same period of time in which he represented the Lorenzana's appeal.

Mr. Lorenzana was placed in total disadvantage during a critical stage of his proceedings and obviously counsel under different circumstances could easily have made the difference in respecting the outcome of Lorenzana's appeal. The record in this case clearly exposes that during oral arguments Mr. Cappell was at his worse episode of his medical condition and could any longer represent any case for good.

Mr. Cappell was fully knowledgeable that his medical condition was affecting his performance if he represented one of the Lorenzana's brother, and yet, he opted to represent both Eliu Lorenzana and his brother Waldemar Lorenzana during appeal. Mr. Cappell was precluded from representing any criminal case in any event under the above mentioned.

Generally, in order to prove a Sixth Amendment violation, a defendant must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 694 (1984). There is an exception to this general rule requiring proof of a probable effect on the outcome, where assistance of

counsel has been denied entirely or during a critical stage of the proceedings. Mickens v. Taylor , 535 U.S. 162, 166 (2002) (citing United States v. Cronic , 466 U.S. 648, 658-59 (1984), among others).

In the case at hand, the circumstances indicate that Lorenzana was denied counsel entirely and during a critical state of the proceedings. A criminal defendant's Sixth Amendment right to assistance of counsel has been extended by the U.S. Supreme Court to include representation during the first appeal after conviction. Because Counsel Cappell was precluded by his medical condition and treatment to represent Mr. Lorenzana's case or any other criminal case.

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. Following this prescription, and in order to ensure that the defendant receives a fair trial, the Supreme Court held in the landmark case of Gideon v. Wainright 372 U.S. 335 (1963), that counsel must be appointed for an indigent defendant charged with a felony. See also Strickland v. Washington, 466 U.S. 668, 689 (1984) (finding that the purpose of granting a defendant the right to counsel "is simply to ensure that criminal defendants receive a fair trial").

2. **Counsel Cappell Went Against His Ethic Duties As A Criminal Counsel Which Are To:**

- Advise and represent clients in courts, before government agencies, and in private legal matters.
- Communicate with their clients, colleagues, judges, and others involved in the case.

- Conduct research and analysis of legal problems and;

- Interpret laws, rulings, and regulations for individuals and businesses.

Mr. Cappell's history as a federal attorney reflects that for many years his duty as representing counsel was impeccable, without a doubt, and it is indisputably that his representation in the Lorenzana's case was intended in good faith, however, whether his capacity was obstructed by his medical condition or not, this fact does not cure his ineffective performance in Mr. Lorenzana's case. Mr. Cappell could not have represented both co-defendants brothers during appeal because: From an ethical standpoint, it most likely violates a lawyer's duty of loyalty and Rule 1.7.

Although Eliu Lorenzana and his brother Waldemar Lorenzana are part of the same indictment, their participation and involvement in the criminal case where totally different. Wherefore, the approach respecting co-defendant's appeal took a different approach with an individual scrutiny.

A lawyer has a duty of undivided loyalty to his or her client. Loyalty and independent judgment are essential elements in a lawyer's relationship to a client. See. Comment 1 to Rule 1.7. A lawyer who attempts to serve clients with conflicting interests cannot give each client the loyalty he or she deserves.

Rule 1.7 addresses a lawyer's duty of loyalty when representing codefendants. It provides, in pertinent part:

(a) Except as provided in Rule 1.7(b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
. . . .
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client. . .

(b) Notwithstanding the existence of a concurrent conflict of interest under Rule 1.7(a), a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

### 3. A Conflict of Interest Exist When Counsel Cappell Represented Both Eliu Lorenzana and Waldemar Lorenzana During Appeal Proceedings.

In the case at hand, *Robert E. Cappell* argued the cause and filed the briefs for both appellants during appeal proceedings (Eliu Lorenzana and for Waldemar Lorenzana-Cordon), which rendered a direct conflict of interest.

Rule 1.7 does not, per se, prohibit joint representation. However, it is almost impossible for a lawyer to provide joint representation in criminal matters without violating the rule. Court of Appeals has stated, the "ethical pitfalls inherent to joint representation of codefendants in criminal cases demand the utmost prudence by attorneys accepting such employment. Comment in Rule 1.7 also warns that representing criminal codefendants is very risky both for the lawyer and the clients. It provides the "potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant." Similarly, Standard 1.7 of the ABA Standards For The Defense Function cautions the defense counsel should not undertake to represent more than one client in the same criminal case except where necessary to secure counsel for preliminary matters such as bond hearings.

The reasons why a lawyer should not represent criminal codefendants is two-fold. First, conflicts almost always exist between criminal codefendants. Some conflicts arise because one defendant decides to "turn against" another. Examples include situations where one defendant wants to testify against another or where one defendant confesses and his or her confession implicates the other defendant. With these situations, the lawyer clearly cannot maintain his or her duty of loyalty to both clients.

Other conflicts do not involve one defendant turning on another but still impact the lawyer's duty of loyalty. These conflicts develop because there are differences in the co-defendant's circumstances. A defendant's demeanor, criminal history, culpability,

and attitude will influence the prosecutor, the judge, and the jury. A lawyer's duty of loyalty prohibits the lawyer from pointing out differences in the codefendants' culpability or criminal history during plea negotiations, trial, and sentencing. If the lawyer makes these comparisons, he or she puts the more-culpable codefendant or the codefendant with a more extensive criminal history at a disadvantage. As the U.S. Supreme Court stated, "in a case of joint representation . . . the evil . . . is in what the advocate finds himself compelled to refrain from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process.

In the case at hand, Robert E Cappell was very ineffective in representing both Eliu Lorenzana and Waldemar Lorenzana during direct appeal, because clearly this fact created fulminant conflict of interest among both co-defendants.

### 4. Ineffective Assistance of Appellate Counsel

The Sixth Amendment to the Constitution provides to criminal defendants the right of effective assistance of counsel at trial and on direct appeal. In assessing appellate counsel's performance, the Court applies the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Smith v. Robbins, 528 U.S. 259, 285 (2000). To establish appellate counsel's ineffectiveness, Mr. Lorenzana must show that counsel's performance was (1) so deficient that it fell below an objective standard of reasonableness under prevailing professional norms, and (2) prejudicial, i.e., that there was "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694 ; accord United States v. Solofa, 745 F.3d 1226, 1229 (D.C. Cir. 2014). A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome" of the appeal. Strickland, 466 U.S. at 669 . "A court does not have to address both components of the inquiry if the petitioner makes an insufficient showing on one of them." Graham v. Bledsoe, 841 F. Supp. 2d 134, 138 (D.D.C. 2012).
The court's analysis begins with "a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at 689 .

As applicable here, Mr. Lorenzana was denied counsel in a critical stage of his criminal proceedings (Direct Appeal), however, additionally, a conflict of interest

was inevitable when counsel Robert E. Cappell represented both Eliu Lorenzana and his brother Waldemar Lorenzana Cordon during direct appeal proceedings.

Under the above mentioned, Waldemar Lorenzana Cordon respectfully moves for relief based on Ineffective Assistance of counse rendered by attorney Robert E. Cappell.

## B. Whether Counsel Robert E. Cappell Failed to Properly Challenge That The Lorenzana's Extradition Was Strictly Based On The Herrera's Limited Duration of Their Conspiracy From 1999 to 2003.

In analyzing the history of the Lorenzana's extradition, the existence of petitioning document, and Republic of Guatemala's limited granting document, cast conflict and confusion respecting specific and limited agreement in rendering extradition by the Republic of Guatemala. In first glance we have **Affidavit of Agent Mary Toscano in Support of Extradition.** However, affidavit of Mary Toscano was the initial petition for extradition, yet not the actual redacted and limited document for which the Republic of Guatemala issued extradition. The Republic of Guatemala in granting extradition documents disagreed with Agent Mary Toscano's affidavit, and limited extradition only to the facts taking place from 1999-2003. (criminal case number 03-331. (1:03-CR-00331) the Herrera's duration of their criminal organization). If we analyze this critical matter properly, request from the United States, and formal document in which Guatemala granted extraditions are two different documents that exacerbate different approaches. Specially, when clarifying such an important fact, such analysis may well change the outcome and perception of the Lorenzana's case.

Extradition document exposes that during or approximately in June of 1999, the DEA opened an investigation into the Herrera-Garcia drug trafficking organization (hereafter "organization"). Which had been operating out of Guatemala since the late 1990s. The investigation identified Otto Herrera-Garcia (hereinafter "Oto Herrera") as the leader of the organization, and Otto Herrera's brother, Guillermo Vinicio Herrera-Garcia, also known as Willy (hereinafter "Guillermo Herrera"), as the organization's logistical coordinator. Over time, the Herrera-Garcia organization had been responsible for facilitating the smuggling of multi-ton shipments of cocaine through an international narcotics trafficking organization that transported cocaine from Colombia to El Salvador, Guatemala, and Mexico for importation to, and distribution in, the United States. Id. **Affidavit in Support of Extradition. At 22.**

In justifying the committal for trial of Eliu Lorenzana-Cordon and Waldemar Lorenzana, Cordon The fallowing was presented to a judge in the Republic of Guatemala:

- According to witnesses, between approximately 1999 and 2003, Haroldo Lorenzana and Eliu Lorenzana handled most of the cocaine shipments received by the Lorenzana organization at a warehouse complex near La Reforma, Zacapa, Guatemala. According to at least one witness, while Waldemar Lorenzana-Lima owed the warehouse complex, Eliu Lorenzana managed it. Eliu was present at the warehouse complex for the receipt, offloading, and inventory of the cocaine shipments. Eliu Lorenzana Cordon and Waldemar Lorenzana Jr. sold the cocaine to their various contacts, all of whom were Mexican drug traffickers operating in Guatemala.

- The payments made by the Lorenzanas to the Herrera-Garcia organization, were reflected in drug ledgers and logbooks that were seized from various properties in Guatemala City in April 2003. The properties were known to be utilized by the Herrera-Garcia organization. The payments reflected in these drug ledgers show that the various members of the Lorenzana organization, including Eliu Lorenzana, made payments to members of the organization for the cocaine in United State dollards. The dates included in the drug legers indicate that many of these payments were made during 2001. Id. **Affidavit in Support of Extradition. At 28-29**
- **Waldemar Lorenzana Jr. :** In addition to being present at the warehouse complex and selling cocaine when it was available, Waldemar Lorenzana Jr. was also present at properties owned by members of the Lorenzana organization that were used by the Herera-Garcia organization to receive cocaine-laden from clandestine airstrips to the warehouse complex, where the cocaine was inventoried and stored by members of he Lorenzana organization, including Haroldo Lorenzana and Eliu Lorenzana, prior to its distribution to Mexico drug traffickers.

A review of the affidavit of Special Agent Fraga and the evidence presented to the Republic of Guatemala rendered sufficient according to the laws of the United States to Justify the committal for trial for the offense for which extradition was sought in the case against Eliu Lorenzana Cordon and Waldemar Lorenzana-Cordon.

1. **Whether The United States Acted Outside The Scope of Its Jurisdictional Boundaries and Against Article III to the 1903 Treaty.**

In the case at hand, Attorney Roberto E. Cappell seemed unfamiliar with the mutual treaty among The United States and The Republic of Guatemala for which he improperly allowed without proper challenge that the United States was bound and limited to facts and charges as described by The Republic of Guatemala in granting extradition. As a jurisdictional matter and in abeyance to the Article III to the 1903 treaty between the United States and the Republic of Guatemala for the mutual extradition of fugitives from justice, Eliu Lorenzana Cordon and Waldemar Lorenzana Cordon were extradited according to the Sworn and Subscribed Affidavit

of May 31, 2011. The sole and jurisdictional purpose of presenting the above-mentioned Affidavit was because Eliu Lorenzana Cordon and Waldemar Lorenzana Cordon could only be tried on charges presented not only by the affidavit but facts and charges limited and returned by the Republic of Guatemala. Because this was a far too serious jurisdictional matter Mr. Lorenzana's attorney acted outside the scope of his responsibilities by not properly challenging an illegal variance from the agreed facts by The Republic of Guatemala. Counsel turned a bling eye to a jurisdictional matter here, because the United States rendered Mr. Lorenzana's conviction without having juristicion and based on facts not agreed by The Republic of Guatemala for extradition. The question here is jurisdictional.

## 2. Whether Constructive Amended Indictment Exists

Whether the United States violated the extradition treaty by constructively amending the indictment presented to the Republic of Guatemala in justifying extradition. Indeed, constructive amendment of the indictment transpired as the extradition clearly presented Eliu Lorenzana Cordon and Waldemar Lorenzana Cordon as being part of the United States of America v. Guillermo Herrera-Garcia et al., Criminal case No. 03-331. Meaning that the United States of America Could only prosecute Eliu Lorenzana Cordon and Waldemar Lorenzana Cordon under the Guillermo Herrera-Garcia et al., Criminal Case No. 03-331, and no additional charges nor theories as the government did here.

In the case at hand, the record may well speak for itself. Supporting transcripts, and official documents reflect how Judge empowered extradition in the Republic of Guatemala referring that extradition was based and only based on evidence dated 1999-2003 representing the Herrera's organization.

Additionally, as an important reference and in support of what was presented for extradition to the judge in the Republic of Guatemala, during Eliu Lorenzana-Cordon and Waldemar Lorenzana-Cordon trial testifying material witness Otto Herrera's testimony was respecting how the Defendants were his subcontractors and how his business ended in 2003. During trial material witness Byron Linares, the accountant for the Otto Herrerra Drug Trafficking Organization also reaffirmed how the Otto Herrera Drug Trafficking Organization came to an end in 2003. What we have here is nothing but a logic practice; If the Herrera-Garcia's organization business ended in 2003, and Eliu Lorenzana-Cordon and Waldemar Lorenzana-Cordon were extradited for being subcontractors to the Herrera-Garcia organization, anything further than the scope of 2003 violates the jurisdictional extradition treaty as it constitutes an amendment to the indictment presented to the Republic of Guatemala for extradition.

The question here, is whether the plain language of "known and unknown" to the conspiracy allows the judiciary to permit the introduction of unidentified people in court without scrutinizing the specific time frame and if suitable to the indictment. Whether a broad application of "Known and Unknown" people to the conspiracy jeopardizes the Fifth and Sixth Amendment Due Process and Partiality in a case where a generally framed indictment that encompasses the specific legal theory but does not give the defendant notice of the individuals with whom he agreed to commit the crime. Clearly, such practice does not satisfy its purpose when naming thirteen of sixteen people and identifying another group of people as known and unknown people to the conspiracy after the time frame of the indictment elapsed and when those people were not accounted by the grand jury and neither presented to the Country granting extradition (In this case The Republic of Guatemala).

### 3. Whether Multiple Conspiracies Existed Unrelated To The Herrera's Organization

On April 2, 2009, A Federal Grand Jury in the District of Columbia returned an indictment against Appellants Eliu Lorenzana-Cordon and Waldemar Lorenzana Cordon, and thirteen other Defendants charging that, from in or around March 1996 and continuing thereafter up and until April 2009, in the Republic of Columbia, El Salvador, Guatemala, Mexico, and elsewhere, the Defendants did unlawfully, knowingly and intentionally combine, conspire, confederate and agree with each other, and with other co-conspirators, both "Known and Unknown" to the Grand Jury to commit certain offenses against the United States.

The Defendants, Eliu Lorenzana-Cordon and Waldemar Lorenzana-Cordon were tried pursuant to a Third Superseding Indictment dated April 2, 2009, (Appx. 0132). The inability to obtain a copy of the original indictment and First Superseding Indictment may deprive the defendants from benefiting from the record in support of the issues presented in this court. The Third Superseding Indictment charges the Defendants with conspiring with each other; with eleven other individuals that are named; three more individuals, one of which is Otto Herrera-Garcia, the head of the Otto Herrera's Drug Trafficking Organization; and a congregation of others identified in the indictment as "other co-conspirators, both known and unknown to the Grand Jury", however not accounted for extradition purposes.

As stated previously the inability to obtain a copy of the original indictment and First Superseding Indictment may deprive Lorenzana from benefiting from the record, however, it is well established that as an initial matter the names involved in the case were established in the following order:

### June 2003 named:

William Eliu Martines, Sabas Martinez

**October 2003 named:**

Otto Herrera, Guillermo Herrera and Byron Linares

**March 2009 named:**

Guillermo Herrera Garcia Byron Linares, Fanor Artazabaleta, James Aristazabaleta, Rey Artazabaleta, Jose Fernando Artazabaleta, Ricardo Alfonso Bravo Izasa, Eliu Lorenzana Cordon, Haroldo Lorenzana Cordon, Waldemar Lorenzana Lima, Waldemar Lorenzana Cordon, Carlosa Andres Alvarenga And Gonzalo Lopez Cabrera.

**April 2009 named:**

Guillermo Herrera Garcia, Byron Linares, Fanor Aristazabaleta, James Aristazabaleta, Rey Aristazabaleta, Jose Fernando Arostazabaleta, Ricardo Alfonso Bravo Izasa, Haroldo Lorenzana Cordon, Eliu Lorenzana Cordon, Waldemar Lorenzana Cordon, Waldemar Lorenzana Lima, Carlos Andres Alvarenga, Gonzalo Lopez Cabrera, Mayo Zambada and Jesus Zambada.

Accordingly, the above-mentioned names were part of the Herrera Organization. It is critical to underline that the names of Sebastian Cotton, Marllory Chacon, David Andrade and Walter Montejo Merida are unmentioned names to the conspiracy.

The Govt.'s case started out with the testimony of Byron Linares, the accountant for the Otto Herrerra Drug Trafficking Organization. He testified in trial from February 23, 2016 until February 29, 2016. His testimony was about how he worked for Otto Herrerra and how the Otto Herrera Drug Trafficking Organization came to an end in 2003. He testified that he was the author of the ledgers that were admitted into evidence. The next material witness was Otto Herrerra-Garcia, the head of the Otto Herrerra Drug Trafficking Organization (hereinafter Otto Herrerrera DTO). Otto Herrera-Garcia testified from March 1, 2016 through March 3, 2016, (Vol. 6.

Appx. 1936). His testimony was how Eliu Lorenzana Cordon and Waldemar Lorenzana Cordon were his subcontractors and how his business ended in 2003. On March 7, 2016, the Govt. introduced the testimony of Walter Montejo Merida, (Vol. 4. Appx. 1304- 1402). He knew nothing about the Otto Herrerra DTO or about the Defendants affiliation with it. He testified that he purchased cocaine from Eliu Lorenzana Cordon four times between 2003 and 2011. The evidence shows that Walter Montejo Merida had absolutely no contact with Waldemar Lorenzana-Cordon during either of the alleged purchases. That during Mr. Merida's alleged conspiracy with Eliu Lorenzana-Cordon, the Co-Defendant, Waldemar Lorenzana Cordon allegedly was involved in a separate conspiracy with another witness by the name of Sebastiana Cotton who testified that during the time that she made alleged purchases from Waldemar, she had no contact with Eliu, which was enough evidence to require a timely request for a multiple jury instruction, (Vol. 4 Appx. 1425-1623).

On March 22, 2016, after a five-week trial, a jury convicted both Eliu Lorenzana-Cordon and Waldemar Lorenzana-Cordon. Following trial the Lorenzana brothers filed motions to unseal and disclose the indictment for purpose of identifying that portion of the Grand Jury Transcripts and any Evidence presented to the Grand Jury regarding cooperating witnesses Sebastiana Cotton, Marllory Chacon, David Andrade and Walter Montejo Merida the alleged "Known and Unknown" people to the conspiracy.

The question here is, where and from which date to which time frame Sebastian Cotton, Marllory Chacon, David Andrade and Walter Montejo Merida the alleged "Known and Unknown" people to the conspiracy can be legally accounted in Eliu Lorenzana-Cordon and Waldemar Lorenzana Cordon's indictment prior to 2003. In accounting the above names as part of the alleged "Known and Unknown" people to the conspiracy, the court has left a blink gap of time frame accountability.

Obviously, Sebastian Cotton, Marllory Chacon, David Andrade and Walter
Montejo Merida the alleged "Known and Unknown" people to the conspiracy came
to play in the conspiracy after the fact, and after the conspiracy culminated in 2003.
Wherefore, clearly the existence of multiple conspiracies were at all times
undermined in Mr. Lorenzana's case. Without logical time frame explanation or
legal support, the above names made part of Eliu Lorenzana-Cordon and Waldemar
Lorenzana-Cordon case only with the sole purpose of filling the government's gaps
in satisfying the indictment. And yet, an illegal constructive amended indictment,
facts clearly part of different conspiracies.

### 4. Whether The District Court Abandoned Its Protective Duty To a Fair and Partial Judicial Proceeding.

Here, prosecution of Mr. Lorenzana overstepped Guatemalan scope of extradition,
and District court abused its discretion by allowing prosecution based on only
affidavit of agent Mary Toscano in support of extradition, without accounting the
actual bill of extradition rendered by Guatemala which limited prosecution only to
The Herrera's Organization episode. Id.

During trial the Government introduced the testimony of Sabastiana Cotton,
Marllory Chacon, David Andrade and Walter Montejo Merida.

#### a. Seabastian Horencia Cotton Vasques.

The government investigated Marllory Chacon respecting Eliu Lorenzana and
Waldemar Lorenzana on March 3, 2016, more than 13-years after the culmination
of the Herrera's organization came to an end in 2003.

#### b. Marllory Dadiana Cacon Rossell

21

The government investigated Marllory Chacon respecting Eliu Lorenzana and Waldemar Lorenzana on March 3, 2016, more than 13-years after the culmination of the Herrera's organization came to an end in 2003.

    c. **Walter Arelio Montejo Merida.**


The government investigated Walter Montejo Merida on February 11, 2016, more than 13-years after the culmination of the Herrera's organization came to an end in 2003.


Neither of the four witnesses were known or heard of by neither Guatemala for extradition nor the grand jury on April 2, 2009, the date of the third superseding indictment, (Vol. 1 Appx. 132). And yet, Eliu Lorenzana And Waldemar Lorenzana Jr. were trayed and convicted highly on the above witnesses' testimonies about the events.

   In the Defendants' motions for new trial. both argued that there was a constructive amendment of the indictment, (Vol. 1. Appx. 428, Vol. 2 Appx. 461). The trial court denied the Defendants' motions, (Vol. 2 Appx. 0738). The court wrote in pertinent part as follows:

**"There was no constructive amendment in this case for the fundamental reason that there was no deviation between the indictment and the proof at trial. The underlying premise of defendants' arguments is that the complete, unredacted indictment only charged defendants with conspiring in the Otto Herrera DTO, which they claim ceased operations in 2003. This premise is not supported, and is indeed contradicted, by the plain language of the indictment. The indictment, a brief document framed in a manner far broader and more generalized than defendants suggest, charges defendants with conspiring not only with individuals associated with Otto Herrera, but also with "other co-conspirators both known and unknown" to the grand jury. The indictment also charges defendants with a conspiracy that lasted from 1996 to 2009, six years past the time defendants claim that the more specific conspiracy the grand Jury "intended" to charge defendants with ceased to exist.**

**Defendants' efforts to paint the indictment as narrow and specifically targeting only the Otto Herrera DTO, see, e.g WLC Reply at 8 ("the indictment was clearly describing the activities of the Herrera DTO"), all require the court to ignore this plain language and read into the indictment limitations that simply are not there. The court will not do so. See United States v Hitt, 249 F.3d 1010, 1020 (D.C. Cir. 1) ("the court adheres to the indictment's plain language").**

**Accordingly, the evidence presented at trial-that defendants conspired with each other and with others, including individuals who were not named in the indictment, to distribute and import cocaine into the United States between 1996 and 2009- is completely consistent with the indictment as it actually reads. As such, there was nothing improper about presenting testimony from individuals not expressly named in the indictment. Because there was no deviation from the indictment, there was no constructive amendment. Sitzmann 74 F. Supp. 3d at 112 ("Where a generally framed indictment encompasses the specific legal theory or evidence used at trial, there is no constructive amendment.") (quoting United States v Rigas, 490 F.3d 208, 228) (2nd Cir. 2007) (internal quotations omitted)" (Vol. 2 Appx. 0747-0748).**

The court's interpretation of the indictment to include, Sebastiana Cotton, Marllory Chacon, David Andrade and Walter Montejo Merida was an alteration of the terms for extradition agreement and for the same indictment. As written above, the Grand Jury had no knowledge of the limited facts to be accounted based on the extradition agreement rendered by Guatemala. As written above, the Grand Jury had no knowledge of either of these four witnesses and therefore were not referring to either of them when preparing the indictment.

Here, Lorenzana's counsel could have challenged the court's abuse of discretion in the rendering of its order, because the indictment was clearly limited based on Guatemala's extradition order, which limited prosecution to the Herrera's organization episode, and which came to an end in 2003.

In the case at hand, the district court renders its ruling based on a broad indictment, however, turns a blind eye to the limited rendering of The Republic of

Guatemala for extradition. Convenient for the government to include names of people that were part of unrelated conspiracies to fill the gaps and distract the court from a decisive and jurisdictional issue.

The district court abused its discretion in treating this case as any other case built in the United States, when was not, this case implicates a jurisdictional matter in abeyance to Article III to the 1903 treaty between the United States and the Republic of Guatemala for the mutual extradition of fugitives from justice.

None of these witnesses had been interviewed by law enforcement prior to April 2, 2009. None of these witnesses were accounted as part of the extradition agreement by Guatemala. Guatemala rendered extradition based on the limited time frame and the Herrera's organization which ended in 2003. Indictment in this case is based on extradition agreement, any alteration to the facts presented to Guatemala for extradition constitutes constructive amendment of the indictment itself.

The indictment numbers the co-defendants 4-16. (Vol.1 Appx 0120) Only thirteen are identified on the Third Superseding Indictment. For example, Otto Herrerra's name was unmentioned in the indictment. In this case, "others known and unknown to the Grand Jury" could mean Otto Herrerra and the other two co-defendants names that do not appear on the third superseding indictment.

Constructive amendments are impermissible because the Fifth Amendment gives a criminal defendant the right to be tried only on the charges of which he is

apprised in the indictment. **United States v. Sitzmann,** 74 F. Supp. 3d 96, 122

(D.C. Cir. 2014); *see* **United States v. Rigas,** 490 F.3d 208, 225-26 (2d Cir.

2007). The "two constitutional requirements for an indictment" are "'first, [that it]

contains the elements of the offense charged and fairly informs a defendant of the

charge against which he must defend, and, second, [that it] enables him to plead

an acquittal or conviction in bar of future prosecutions for the same offense.'"

**United States v. Resendiz-Ponce, 549 U.S. 102, 108 (2007) quoting Hamling v.**

**United States, 418 U.S. 87, 117(1974).** "The issue in determining whether an

indictment has been constructively amended, then, is whether the deviation

between the facts alleged in the indictment and the proof adduced at trial

undercuts these constitutional requirements." **United States v. Rigas, 490 F.3d at**

**228.** "The defendant is deprived of his right to have all charges screened by the

grand jury only if the deviation in proof . . . from the specifics of the indictment

affects an essential element of the offense charged." **United States v. Lemire,**

**720 F.2d 1327, 1345, (D.C. Cir. 1983).**


The indictment in this case was constructively amended because it presented

the legal theory of the case but did not give the Defendants notice of all of the

individuals with whom they agreed to commit the crime. A generally framed

indictment that encompasses the specific legal theory but does not give the

defendant notice of the individuals with whom he agreed to commit the crime, does not satisfy its purpose by naming thirteen of sixteen people and identifying another group of people as known and unknown. "It is an elementary principle of criminal pleading, that where the definition of an offence, whether it be at common law or by statute, 'includes generic terms, it is not sufficient that the indictment shall charge the offence in the same generic terms as in the definition; but it must state the species, -- it must descend to particulars." United States v. Cruikshank, 92 U.S. 542, 558 (1886) An essential element of the crime is to identify with whom the Defendants agreed. "The object of the indictment is, first, to furnish the accused with such a description of the charge against him as will enable him to make his defense…" *Id.* "For this, facts are to be stated, not conclusions of law alone," *Id.* If it cannot be determined who the grand jury was referring to, a defendant is deprived of his right to be tried only on the charges returned by a grand jury. *See,* **Stirone v. United States**, 361 U.S. 212 (1960); **Ex Parte Bain**, 121 U.S. 1 (1887) "After an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." **Stirone, at 215-216.**

The number of co-defendants identified in the indictment supports the

Mr. Lorenzana's argument that there was a constructive amendment of the indictment.[1] The number of co-defendants suggest that the list is complete. People generally do not give thirteen or sixteen examples to make a meaning clearer or as an illustration. How many more witnesses could the Government have called to testify if "others known and unknown to the Grand Jury" could be broadened by the Court? *See*, **Stirone v. United States**, **361 U.S. 212 (1960)** *citing* **Ex parte Bain, 121 U.S. 1 (1887)**. A literal interpretation of the indictment could mean more than one million people.

Mr. Lorenzana presents that Counsel Robert Cappell could have substantially challenged the jurisdictional aspect of his case, as rendered by the Republic of Guatemala during extradition. At the same time Mr. Cappell could have clarified that multiple unrelated conspiracies existed dating from facts other than those exhibited to the grand jury and to the judiciary in Guatemala for extradition purposed. Now, Lorenzana presents this Court with an opportunity to clarify the "extradition" standard in the face of Government's actions that violate the

---

[1] The indictment numbers the co-defendants 4-16. (Vol.1 Appx 0120) Only thirteen are identified on the Third Superseding Indictment. Otto Herrerra's name is not even on the indictment. In this case, "others known and unknown to the Grand Jury" could mean Otto Herrerra and the other two co-defendants names that do not appear on the third superseding indictment.

constructive amendment of an indictment rule. Absent intervention by this Court, the previously orders and decision taken against Mr. Lorenzana were selectively determined under only those facts presented by a request affidavit for extradition which will work to undermine extradition treaty that was carefully crafted procedural safeguards that this Court has spent protecting. Specifically, Lorenzana presents that the actual and limited facts rendered by Guatemala have been ignored and counsel Cappell simply turned a blind eye to this critical fact.

**C. Whether Trial Counsel and Counsel Cappell Were Ineffective For Not Challenging The insufficiency of The Elements To Prove Distribution Manufacture and Distribution of Five Kilograms or More of Cocaine With Out Affecting The Rule of Lenity.**


Waldemar Lorenzana Cordon and his brother Eliu Lorenzana came to the attention of U.S. law enforcement officials, and, in 2009, a federal grand jury issued a sealed indictment charging Eliu and Waldemar, among others, with one count of conspiring to "import into the United States" and to "manufacture and distribute" for import into the United States five kilograms or more of cocaine in violation of 21 U.S.C. §§ 952, 959, 960(b)(1)(B)(ii), and 963. Third Superseding Indictment (Indictment), Joint Appendix (J.A.) 457–58. The Indictment further specified that the brothers conspired "with each other, and with other co-conspirators, both known and unknown to the Grand Jury" in "the Republic of Colombia, El Salvador, Guatemala, Mexico, and elsewhere." *Id.* Guatemala extradited the brothers to the United States and, following a trial at which they were the sole codefendants, a jury convicted both Eliu and Waldemar on the conspiracy count.

28

On March 22, 2016 a jury trial, siting in the District of Colimbia convicted Waldemar Lorenzana Cordon of unlawfully, knowingly, and intentionally import into the United States five kilograms or more of a mixture and substance containing a detectable amount of cocaine; and "manufacture and distribute" Five kilograms or more of a mixture and substance containing a detectable amount of cocaine, knowing or intending that such a substance would be unlawfully imported into the United States in violation of Title 21 U.S.C. §§ 952, 959, 960(b)(1)(B)(ii), and 963. (Doc # 802).

The question here is whether the sufficiency of the evidence supports distribution, manufacture and importation of Five kilograms or more of cocaine as a single count (Count One) in the Third Superseding Indictment without affecting the Rule of Lenity.

 Mr. Lorenzana urges that the ambiguity in charging multiple charges in one count (Count One) lessened the burden of the government's proof during Mr. Lorenzana'z trial, and denied him of proper notice of the charges against him. Although superseded indictment charged Mr. Lorenzana with conspiracy, as part of the same Count One we have Distribution, Importation and Manufacturing as part of Count One. Clearly here, and convenient for the government, the burden of proof was simply lessen, however ambiguous. The question here is whether one overt act was sufficient to establish the three different conspiracies (Conpiracy to Distribute, Conpiracy to Manufacture and Conspiracy to import) since there is the existence of multiple statutes under Count One. When charging multiple statutes, under common practice, every statute must be charged independently and proven under separate burden of proof by the government. Than was not the case here, here, the government multiply charged Three different crimes and statutes under

29

Count One. Charging manufacture, distribution, and importation as a single count was unconstitutional and violated the Rule of Lenity. As manufacture, distribution, and importation must be charged separately and evaluated as independent counts.

Were as here, the court may not permit the government's construction of more that one crime attached to One Count, because every crime was assigned by Congress different statutes. Mr. Lorenzana presents that he was denied proper notice in his indictment and ambiguous comprehension to which crime was he convicted of. "[T]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." United States v. Santos, 553 U.S. 507, 514 , 128 S.Ct. 2020 , 170 L.Ed.2d 912 (2008).

Rule of lenity is the canon of constitutional avoidance which requires that if one of two linguistically permissible interpretations raises "serious constitutional problems" and the other does not, we are to choose the second unless it is "plainly contrary to the intent of Congress." See Solid Waste Agency of N. Cook County v. U.S. Army Corps of Engineers, 531 U.S. 159, 173, 121 S.Ct. 675, 148 L.Ed.2d 576 (2001) (quoting Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council, 485 U.S. 568, 575, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988)).

In the case at hand, drug-related charges were improperly joined. At no time before or during trial did Counsel objected to the joinder of the charges or move for a severance. There is of course nothing inherently erroneous about including multiple charges in one indictment. "[An] indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).

However, what we have here is multiple crimes charged in One sole Count (Count One) which creates confusion to which crime was Mr. Lorenzana convicted of.

For the foregoing reasons, Mr. Waldemar moves for relief in this matter as the Rule of Lenity applies here.

## CONCLUSION

In accordance with the foregoing, Waldemar Lorenzana Cordon respectfully prays that his sentence and conviction be Vacated and that this Honorable Court grant the relief requested and or any other relief that this court deems appropriate under the circumstances of this case.

Executed and signed on this _27_ day of _December_, 2021.

Respectfully Submitted

_Waldemar Lorenzana Cod._

# CERTIFICATE OF SERVICE

I, Waldemar Lorenzana Cordon, hereby certify under penalty of perjury, that on this December 27, 2021, I placed a copy of the foregoing Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C 2255 in a Mailbox at the BOP United States Penitentiary Lee, VA. With sufficient prepaid postage. A copy of the foregoing motion was served to the District Columbia U.S. District Attorney's office.


Respectfully Submitted

*Waldemar Lorenzana Cordon*
**WALDEMAR LORENZANA-CORDON**
**# 33481-016**
**U.S. PENITENTIARY**
**P.O. BOX 305**
**JONESVILLE, VA  24263**